IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

KERR-McGEE CORPORATION and
CYPRUS FOOTE MINERALS CORPORATION
      Plaintiffs,

vs.                                               NO. CIV 95-0438 MV/RLP

KEE TOM FARLEY, individually and on behalf of
THE ESTATE OF LUCY K. FARLEY and
HAROLD KADY, SR., individually and on behalf of
THE ESTATE OF JULIA ME KADY,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Plaintiffs' Kerr-McGee Corporation and

Cyprus Foote Mineral Corporation ("Kerr-McGee") Motion to Lift Stay and Application for

Preliminary and Permanent Injunction filed August 27, 1999 **[Doc. No. 40]** and Unopposed

Motion Requesting Oral Argument filed August 27, 1999 **[Doc. No. 44]**.  Kerr-McGee

additionally seeks costs and attorney fees associated with filing these motions.  Also before the

Court is Defendants' Kee Tom Farley, Estate of Lucy Farley, Harold Kady, Sr., and Estate of

Julia Mae Kady ("Tribal Claimants") Motion for Summary Judgment, filed September 13, 1999

**[Doc. No. 45]**.

Kerr-McGee asks the Court to find that the Price-Anderson Act of 1988 establishes an

exclusive federal adjudicatory framework covering any alleged injury from nuclear materials.

Accordingly, Kerr-McGee argues that the Navajo Nation tribal court is without jurisdiction to

1

adjudicate claims arising under the Price-Anderson Act and this Court should enjoin the Tribal Claimants from proceeding with any such actions in Navajo Court. Tribal Claimants conversely argue that the Price-Anderson Act provides for concurrent, not exclusive, federal jurisdiction over actions arising from nuclear incidents, and the Court should find as a matter of law that tribal court jurisdiction has not been preempted by the Price-Anderson Act.

The Court, having considered the parties' pleadings, the applicable law, and being otherwise fully informed, finds that Kerr-McGee's Motion to Lift Stay and Application for preliminary injunction is well taken and will be GRANTED. Kerr-McGee's Motion for Attorney Fees and Costs is not well taken and will be DENIED. The Court further finds that Tribal Claimants motion for summary judgment is not well taken and will be DENIED. Pursuant to 28 U.S.C. § 1292(b) this Court *sua sponte* certifies this issue for interlocutory appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

The present motions arise after a lengthy and complex procedural history. The Tribal Claimants originally filed this wrongful death, loss of consortium, and misrepresentation action in the District Court of the Navajo Nation, Shiprock Judicial District on January 12, 1995, complaining that illness and death had arisen from radioactive emissions caused by the negligent operation of a uranium milling operation owned by Kerr-McGee and operated on tribal lands. On April 21, 1995, Kerr-McGee filed an action in this Court seeking to enjoin the tribal court proceedings and challenging tribal court jurisdiction to hear nuclear tort claims in light of the Atomic Energy Act and its Price-Anderson Act amendments. The Price-Anderson Act provides a defendant sued for "public liability actions" with an absolute right of removal from state court to

federal court, but does not provide a similar removal procedure from tribal court to federal court. In its initial 1995 motion Kerr-McGee contended that notwithstanding congressional silence on tribal jurisdiction over the Price-Anderson Act, Congress had so clearly intended to occupy the entire field of nuclear regulation, thereby preempting any tribal jurisdiction over nuclear torts. On June 8, 1995 this Court denied Kerr-McGee's motion for injunctive and declaratory relief, and issued a stay in that matter pending exhaustion of tribal court adjudicative remedies. *See Kerr-McGee v. Farley*, 915 F. Supp. 275 (D.N.M. 1995). Specifically, this Court held that in the absence of any express tribal jurisdiction prohibition set forth in the Price-Anderson Act, the Court would presume that the Price-Anderson Act does not divest tribal jurisdiction. *Id*. at 277. The Court ruled that although it had federal and diversity subject matter jurisdiction over the case, the tribal exhaustion doctrine required that the tribal court be given the first opportunity to determine its own jurisdiction. *Id.* at 276 (*citing to National Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845 (1985); *see Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9 (1987). The Court also noted that it was not deciding the substantive issue of whether the Price-Anderson Act provided the exclusive remedy in this case. *Id.* at 279 n. 9. On these grounds, the Court denied the relief sought and issued a stay of proceedings pending tribal exhaustion.

Following this Court's ruling, the District Court of Navajo issued an order finding tribal court jurisdiction over the tort claims asserted by the Tribal Claimants. *See Farley v. Kerr-McGee*, No. 103-95 Navajo D. Ct. (Aug. 1, 1996). The Navajo Court held that not only does the Price-Anderson Act not preempt tribal adjudication of the claims, but that the Price-Anderson Act does not apply at all to the Tribal Claimants' suit, and therefore, tribal court jurisdiction would not interfere with federal regulation of nuclear activity. In so holding, the Navajo Court reasoned

that the Price-Anderson Act applied only when a private entity was under an indemnification agreement with the federal government, a situation not applicable to Kerr-McGee. Trial in the Navajo Court on this matter was set for April, 2000.

On June 25, 1997, the Tenth Circuit affirmed this Court's denial of injunctive and declaratory relief and application of tribal exhaustion. *See Kerr-McGee v. Farley*, 115 F.3d 1498 (10th Cir. 1997). The precise issue before the Tenth Circuit was not whether the Navajo Court had jurisdiction over the claims brought by the Tribal Claimants, but rather whether the Price-Anderson Act so obviously preempted tribal jurisdiction, such that an action in tribal court would be "patently violative of express jurisdictional prohibitions." *Id*. at 1502. The Tenth Circuit held that the Price-Anderson Act does not expressly prohibit the exercise of tribal jurisdiction in the absence of a statutory removal procedure from tribal to federal court. *Id.* at 1504-1505. The Court reasoned that exclusive federal jurisdiction is not conferred by statute unless specified explicitly. *Id.* at 1505. The Court further ruled, after an extensive comity analysis, that the tribal exhaustion rule dictated that a federal court should abstain from adjudicating Price-Anderson Act claims brought in tribal court until all tribal remedies had been exhausted. *Id.* at 1508. As such, the Tenth Circuit concluded that this Court had properly refrained from determining the merits of the jurisdictional challenge brought by Kerr-McGee. In addition, although this Court had abstained from determining whether the claims brought by Tribal Claimants fell within the Price-Anderson Act, the Tenth Circuit concluded that the asserted claims were indeed claims under the Price-Anderson Act, stating "[t]he PAA on its face provides the sole remedy for the torts alleged in this case...." *Id*. at 1504.

**LEGAL STANDARD**

**I.      Summary Judgment**

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (*quoting* Fed.R.Civ.P. 1).  Under Rule 56(c), summary judgment is appropriate when the Court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).  The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case."  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325.  In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient

showing on an essential element of her case with respect to which she has the burden of proof."
*Id.* at 322.


## II.     Preliminary Injunction

In order to establish entitlement to a preliminary injunction, the moving party must show
(1) there will be irreparable injury if an injunction is not granted; (2)  the threatened injury to the
moving party outweighs any injury the injunction will cause to the nonmoving party; (3) the
injunction would not be detrimental to the public interest; and (4) there  is a substantial likelihood
the party will succeed on the merits.  *See Walmer v. United States Dep't of Defense*, 52 F.3d 851,
854 (10th Cir)., *cert. denied* 516 U.S. 974 (1995).


## DISCUSSION

Against the backdrop of this procedural and legal background, Kerr-McGee now moves
again for a preliminary injunction enjoining Tribal Claimants from pursuing their suit in Navajo
Court.  As grounds for this motion, Kerr-McGee argues that the United States Supreme Court's
recent decision in *El Paso Natural Gas v. Neztsosie*, 526 U.S. 473 (1999) has undercut this
Court's decision in *Kerr-McGee v. Farley*, 915 F. Supp. 273, as well as the Tenth Circuit's
affirmance, 115 F.3d 1498, and that the intervening *Neztsosie* decision warrants reversal of this
Court's prior ruling.   Kerr-McGee contends that the Supreme Court held in *Neztsosie,* (1) tribal
courts do not have jurisdiction over Price-Anderson Act claims once injunctive relief is sought in
a federal court; (2) tribal court exhaustion is contrary to congressional intent, and therefore,
unnecessary when the Price-Anderson Act is involved; and (3) federal district courts should enjoin

Price-Anderson Act actions filed in tribal courts once a defendant has sought a federal forum. This holding, according to Kerr-McGee, is dispositive of the issues in the present case.

Tribal Claimants dispute Kerr-McGee's analysis of the Supreme Court's holding in *Neztsosie*. They aver that the *Neztsosie* holding does not oust tribal courts of jurisdiction to hear claims arising under the Price-Anderson Act. The Tribal Claimants argue to the contrary that the *Neztsosie* decision narrowly held only that (1) the comity concerns behind the tribal exhaustion doctrine were not applicable to the Price-Anderson Act, and (2) a federal court should make the initial determination of whether a claim arises under the Price-Anderson Act, rather than deferring to the tribal court. The Tribal Claimants also argue that notwithstanding the Supreme Court's decision in *Neztsosie*, the Price-Anderson Act itself does not divest tribal courts of jurisdiction to hear cases arising under the Act. Accordingly, Tribal Claimants ask the Court to grant summary judgment in their favor, finding as a matter of law that tribal courts have jurisdiction to adjudicate Price-Anderson Act actions.

In order to resolve these differing interpretations of *Neztsosie*, this Court must clarify the proper scope of the *Neztsosie* holding, and determine what effect *Neztsosie* has on the case at bar. An initial review of the governing Price-Anderson Act and the tribal exhaustion rule will also be of assistance.

I.      **Price-Anderson Act**

The Atomic Energy Act of 1954 was created to facilitate a transition from a government monopoly over the nuclear industry to a regime in which the private sector could explore beneficial production and uses of atomic energy. *See Pacific Gas & Electric Co. v. State Energy*

*Resources Conservation and Dev. Comm'n*, 461 U.S. 190, 206-207 (1983). A federal agency, now known as the Nuclear Regulatory Commission, was given exclusive jurisdiction to oversee production and use of nuclear materials. *Id.* at 207. With very few exceptions, state attempts to regulate the nuclear industry were preempted. *Id.* at 209-210.

In 1957, Congress amended the Atomic Energy Act through the Price-Anderson Act (PAA) creating specific protections from tort liability for the nuclear industry. *See Silkwood v. Kerr-McGee*, 464 U.S. 238. The PAA limited tort liability through a system of private insurance, government indemnification, and limited liability for "public liability claims." "Public liability claims" created the only mechanism for legal tort liability under the PAA. A "public liability action" has, after amendment, been broadly defined as "any legal liability arising out of or resulting from a nuclear incident...." 42 U.S.C. § 2014(w). The PAA defines a "nuclear incident" as "any occurrence...within the United States causing...bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, ore byproduct material...." § 2014(q). "Source materials" include uranium and uranium ore. § 2014(z). "Byproduct materials" include "the tailings or wastes produced by extraction or concentration of uranium or thorium...." *Id.* These are among the substances alleged in this case to have caused the Farley Tribal Claimants' injuries.

Suits in both federal and state courts proliferated following the well-publicized Three Mile Island accident. At the time, however, there was no mechanism for consolidating these many federal and state claims in any single court. So, in 1988, Congress again amended the PAA, this time granting U.S. District Courts original jurisdiction over all "public liability actions." §

2210(n)(2). The substantive law for adjudicating public liability actions is derived from the law of the state in which the nuclear incident occurs, to the extent that such law is not inconsistent with the PAA. §2014(hh).[1] In addition, defendants were given the absolute right to remove any "public liability action" brought in state court to a federal district court. As a result of this amendment, the PAA now provides for the consolidation and management of such federal and state actions in federal courts. §§ 2210(n)(2); 2210(n)(3); 2210(o). The pertinent legislative history states, "the provisions for consolidation of claims in the event of any nuclear incident...would avoid the inefficiencies resulting from duplicative determinations of similar issues in multiple jurisdictions that may occur in the absence of consolidation." *See S. Rep. No. 100-218* at 13 (1987); *H.R. Rep, No. 100-104* at 30 (1988). No similar removal procedure was given over actions brought in tribal court. Notwithstanding the several government licenses granted to private industries for the purpose of mining on tribal reservations, the PAA remains silent on how to proceed when a tort claim is brought in tribal court.

## II.     Tribal Exhaustion Rule

The tribal exhaustion rule was developed from the understanding that Congress is committed "to a policy of supporting tribal self-government and self determination." *National Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. at 856. The development of tribal courts plays an important role in furthering the goal of tribal self-government. *See Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. at 14-15. Based upon this policy of promotion of tribal self-

---

[1]     Although the statute does not specify whether tribal law should apply where a nuclear incident occurs on tribal land, in light of this Court's present ruling it would not be implausible for tribal law to be applied to public liability actions brought in federal court.

determination, the United States Supreme Court developed the "tribal exhaustion rule" out of concern that in federal question and diversity cases "unconditional access to a federal forum would place it in direct competition with the tribal courts, thereby impairing the latter's authority over reservation affairs." *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. at 16. Federal court determination of tribal court jurisdiction also "infringes upon tribal lawmaking authority, because tribal courts are best qualified to interpret and apply tribal law." *Id.*

The tribal exhaustion rule provides that "as a matter of comity, a federal court should not exercise jurisdiction over cases arising under its federal question or diversity jurisdiction, if those cases are also subject to tribal jurisdiction, until the parties have exhausted their tribal remedies." *Texaco, Inc. v. Zah*, 5 F.3d 1374, 1376 (10th Cir. 1993) (*quoting Tillet v. Lujan*, 931 F.2d 636, 640 (10th Cir. 1991)); *see also National Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. at 856-57; *Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. at 15-16. There are three exceptions to the tribal exhaustion rule. The rule does not apply where tribal court jurisdiction is motivated by harassment or bad faith; where tribal court action violates express jurisdictional prohibitions; or where tribal exhaustion would be futile due to an inadequate opportunity to challenge tribal court jurisdiction. *See National Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. at 856, n. 21. If none of these three exceptions prohibits consideration of the tribal exhaustion rule, then the court should engage in an analysis "based on comity concerns for Indian tribes in maintaining their sovereignty." *Kerr-McGee Corp. v. Farley*, 115 F.3d at 1507. These comity concerns advance three distinct interests: "(1) furthering congressional policy of supporting tribal self-government; (2) promoting the orderly administration of justice by allowing a full record to be developed in the tribal court; and (3) obtaining the benefit of tribal expertise if further review becomes necessary."

*Id.* (*citing National Farmers Union Ins. Co. v. Crow Tribe of Indians* 471 U.S. at 856-57). When the dispute in question involves a reservation affair, these comity concerns "almost always dictate that the parties exhaust tribal remedies before resorting to a federal forum." *Texaco, Inc. v. Zah*, 5 F.3d at 1378.

This Court applied the tribal exhaustion rule when originally presented with the jurisdictional challenge to the Navajo Court's adjudication of the nuclear torts alleged by Tribal Claimants. The Court found that the claims involved a "reservation affair" because of the Navajo Nation's strong interest in promoting the health and welfare of its members. *See Kerr-McGee v. Farley*, 915 F. Supp. at 279. Furthermore, because the events occurred on tribal reservation land, the Court presumed that absent any express jurisdictional prohibition, the tribal court could exert jurisdiction over the claims. *See Kerr-McGee v. Farley*, 915 F. Supp. at 277. Accordingly, the Court, without engaging in an extensive comity analysis, applied the tribal exhaustion rule and abstained from ruling on the merits of the jurisdictional challenge presented by Kerr-McGee. The Tenth Circuit affirmed this Court's decision. *See Kerr-McGee Corp v. Farley*, 115 F.3d 1498.

With this understanding of both the PAA and the tribal exhaustion doctrine, the Court can now proceed to an analysis of the effect of the Supreme Court's decision in *Neztsosie*.


III.    **El Paso Natural Gas Co. v. Neztsosie**

In *El Paso Natural Gas Co. v. Neztsosie*, a case quite similar to the one at bar, Navajo Tribal Claimants ("Neztsosie") brought two separate actions for wrongful death and personal injury against El Paso Natural Gas Company and Cyprus Foote Mineral Corporation ("El Paso") in Navajo District Court, Tuba City Judicial District. El Paso Defendants then filed an action in

the U.S. District Court for the District of Arizona seeking to enjoin the tribal proceedings. *See El Paso Natural Gas Co. v. Neztsosie*, 136 F.3d 610 (9th Cir. 1998). The district court denied El Paso's prayer of injunctive relief against tribal common law claims, but entered a preliminary injunction prohibiting the Neztsosie Tribal Claimants from pursuing PAA "public liability" claims in tribal court. The district court, pursuant to the tribal exhaustion rule declined to consider whether the tribal claims had been preempted by the PAA. El Paso appealed the district court's refusal to enjoin the entire tribal action and its refusal to determine whether the tribal claimants actions were in fact PAA actions. The Neztsosie Tribal Claimants did not appeal the partial injunction barring their pursuit of PAA claims in tribal court. The Ninth Circuit affirmed the district court's application of the tribal exhaustion rule and *sua sponte* reversed the district court's partial injunction barring the PAA claims from proceeding in tribal court. In so doing, the Ninth Circuit held that unless an exception to the tribal exhaustion requirement applies, the district court is obligated to abstain from ruling on the tribal court's jurisdiction over the Tribal Claimants claims. *See El Paso Natural Gas v. Neztsosie*, 136 F.3d at 614.

The United States Supreme Court granted *certiorari* to review the Ninth Circuit's decision. The Supreme Court framed the issue as "whether the judicially created doctrine of tribal court exhaustion, requiring a [federal] district court to stay in its hand while a tribal court determines its own jurisdiction, should apply in this case, which if brought in state court would be subject to removal. *El Paso Natural Gas v. Neztsosie,* 526 U.S. 473, 476 (1999). The Court's summary answer to its query was "[w]e think the exhaustion doctrine should not extend so far." *Id.*

The Supreme Court as an initial matter reversed the Ninth Circuit for its *sua sponte* review

12

of the district court's partial injunction prohibiting pursuit of PAA actions in tribal court. The

Supreme Court explained that absent any appeal by the parties of this issue the Ninth Circuit

Court of Appeals had no jurisdiction to review the partial injunction. Accordingly, the Supreme

Court reinstated the district court's partial injunction and specially noted that "because [the tribal

claimants] did not appeal the injunction, we have no occasion to consider its merits." *Id.* at 483.

Despite the Court's admonishments to the Ninth Circuit for reviewing a matter on appeal, and its

own statement that it would not be considering the merits of the injunction, the Supreme Court

did drop a footnote expressing, in *dicta*, its own view of the validity of the injunction. The Court

stated:

> "[a]lthough we do not reach the merits of the injunction, candor requires acknowledging
> that our view of the inappropriateness of applying tribal exhaustion. . . suggests that
> notwithstanding the silence of the Price-Anderson Act with respect to tribal courts, the
> exercise of tribal jurisdiction over claims found to fall within the Act once a defendant has
> sought a federal forum would be anomalous at best." *Id.* at 483, n. 5

Turning to the matter on appeal, the district court's application of tribal exhaustion, the

Supreme Court concluded that the comity rational underlying the tribal exhaustion doctrine does

not apply to the PAA. The Supreme Court reasoned that Congress had expressed in the PAA an

"unmistakable preference for a federal forum, at the behest of a defending party, both for litigating

a Price-Anderson claim on the merits and for determining whether a claim falls under Price-

Anderson when removal is contested." *Id*. at 484-85. Although the removal procedure applies

only to actions brought in state court, the Supreme Court was "at a loss to think of any reason

that Congress would have favored tribal exhaustion." *Id*. at 485. Noting that the removal

procedure eliminates any sense of comity or deference toward state courts, the Supreme Court

surmised that "the apparent reasons for this congressional policy of immediate access to federal

forums are as much applicable to tribal -- as to state -- court litigation." *Id*. at 485-86. Referring

to legislative history, the Supreme Court found that Congress created the removal and

consolidation procedures in the PAA in order to "avoid the inefficiencies resulting from

duplicative determinations of similar issues in multiple jurisdictions that may occur in the absence

of consolidation." *Id.* at 486 (*citing to S.Rep. No. 100-218* at 13). In the face of this legislative

history, and the congressional preference for a federal forum for PAA actions, the Supreme Court

concluded that "[a]pplying tribal exhaustion would invite precisely the mischief of 'duplicative

determinations' and consequent 'inefficiencies' that the Act sought to avoid...." *Id.* at 486. The

Supreme Court only summarily explained Congress' silence on tribal jurisdiction over PAA

claims as the result of "inadvertence." *Id.* at 487.[2] Ultimately, because the comity rationale for

tribal exhaustion falls short of the PAA, the Supreme Court narrowly held that "the District Court

should have decided whether respondent's claims constituted 'public liability action[s] arising out

of or resulting from a nuclear incident." *Id.* at 488 (*citing to* 42 U.S.C. § 2210(n)(2).

The Supreme Court did not elucidate what the district court should have done once it

concluded that the actions were or were not PAA public liability actions. Aside from the *dicta*

---

[2]        This Court is troubled about the possibility that the *Neztsosie* holding may be used
to chip away at established tenants of tribal sovereignty. However, the Court's concern is
alleviated somewhat by the Supreme Court's observation that [u]nder normal circumstances,
tribal courts...can and do decide questions of federal law, and there is no reason to think that
questions of federal preemption are any different." 536 U.S. at 485, n.7. This statement clarifies
that the Supreme Court recognized the PAA to be the "rare" situation in which Congress has
expressed a preference for a federal forum. *Id*. Thus, the Supreme Court's explanation that
congressional silence on tribal jurisdiction is the product of "inadvertence" does not mean that
congressional silence should be similarly disregarded in determining the scope tribal jurisdiction.
This Court does not view the *Neztsosie* opinion as undermining prior Supreme Court precedent
which makes clear that the proper inference from congressional silence is that tribal sovereignty
remains intact. *See Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. at 18; *Merrion v. Jicarilla
Apache Tribe*, 455 U.S. 130, 148, n. 4 (1982).

concerning the district court's partial injunction, the *Neztsosie* opinion provides little guidance on what procedure is appropriate once a federal court is faced with a defendant challenging tribal jurisdiction over possible PAA claims.

What is clear from *Neztsosie* is that tribal exhaustion and comity concerns are not to be applied by a federal court when faced with a putative PAA action because (1) any generalized sense of comity toward nonfederal courts has been displaced by the provisions for preemption and removal from state court; (2) the congressional policy of immediate access to federal forums are as much applicable tribal as to state court litigation; (3) the PAA provided clear indications of the congressional aims of speed and efficiency; and (4) applying tribal exhaustion in this context would invite the duplicative determinations and inefficiencies the PAA sought to avoid. Under these circumstances, the congressional concerns underlying the PAA were seen by the Supreme Court to override the normally present justifications for the tribal exhaustion of remedies.

In the case at bar, this Court is confronted with a similar situation in all pertinent aspects to that of *Neztsosie*. Like the *Neztsosie* Tribal Claimants, the Farley Tribal Claimants are asserting various torts for injuries arising from Kerr-McGee's alleged wrongful conduct in the operation of uranium mill located on tribal trust land within the territorial jurisdiction of the Navajo Nation. Like *Neztsosie*, this claim was originally filed in Navajo Court, and defendants have sought declaratory and injunctive relief in federal court.

Given, the analogous nature of the two cases, it is clear that *Neztsosie* applies to the present case. To the extent that this Court relied on the application of tribal exhaustion and comity principles in abstaining from determining the jurisdictional challenge brought by Kerr-McGee, its prior denial of injunctive and declaratory relief has been undercut. Pursuant to

*Neztsosie*, this Court must now determine (1) whether the claims asserted by Tribal Claimants are in fact public liability actions under the PAA; and (2) if so, what would be the proper forum for adjudicating these claims.

## IV.     Application of *El Paso Natural Gas v. Neztsosie* to the Present Case

### 1.     Public Liability Actions

Pursuant to the *Neztsosie* holding that the tribal exhaustion rule does not apply to putative PAA claims, the federal court must determine whether the claims asserted by the Farley Tribal Claimants are PAA public liability actions.  This issue, however, was already determined by the Tenth Circuit on appeal from this Court's denial of injunctive and declaratory relief.  *See Kerr-McGee Corp. v. Farley*, 115 F.3d 1498.  Indeed, the parties agree in their present motions before this Court that this issue has already been resolved.  *See Plaintiffs' Memorandum in Support of Its Motion for Preliminary and Permanent Injunction and Lift of Stay* ¶ 5 ("...the Court of Appeals ruled that the Price-Anderson Act...on its face provides the sole remedy for the torts alleged by defendants against Plaintiffs in the Tribal Court Suit....That ruling of the Tenth Circuit is the law of the case"); *see also Tribal Court Plaintiffs Memorandum of Law in Opposition to Plaintiffs' Motion* at 4, n.5 ("the tribal-court Plaintiffs here are not challenging whether their claims are, in fact, Price-Anderson claims and will *arguendo* assume them to be so.")

Although these tribal common law actions have already been determined to be public liability actions, it is worthwhile to review the Tenth Circuit's reasoning in coming to this conclusion.  The Tenth Circuit held that "[t]he PAA on its face provides the sole remedy for the torts alleged in this case."  *Kerr-McGee v. Farley*, 115 F.3d at 1504.  In so holding, the Tenth

16

Circuit engaged in an analysis of the definition of "public liability action" under the PAA, 42

U.S.C. § 2014(w). According to the Tenth Circuit, the concept of a public liability action is

"sweeping," encompassing "any legal liability from 'nuclear incidents' which are in turn defined in

§ 2014(q) to include any occurrence causing any personal or property damage arising out of the

toxic, radioactive, explosive or other hazardous properties of atomic or byproduct material." *Id.*

at 1503 (*citing to* 42 U.S.C. § 2104(w)). The Tenth Circuit rejected the Tribal Claimants

argument that a "public liability action" could only be established in the presence of an indemnity

agreement between the federal government and the nuclear operator. Rather, the Tenth Circuit

concluded that Tribal Claimants erroneously relied upon *Silkwood v. Kerr-McGee,* 464 U.S. 238

(1984), which did not suggest "that the absence of an indemnity agreement makes the PAA's

jurisdictional provisions inapplicable." The Tenth Circuit interpreted *Silkwood* as having "simply

refused to apply the indemnification provisions of the PAA to the claim in that case because the

defendant lacked the necessary indemnity agreement." *Id.* at 1504. (*citing to Silkwood*, 464 U.S.

at 252, n. 12).[3] Having concluded that an indemnity agreement was not required to establish a

public liability action, the Tenth Circuit surmised that "the jurisdictional provisions of the PAA, 42

---

[3]    The District Court of New Jersey disagreed with this holding in *Gilberg v. Stephan Co.*, 24 F. Supp. 2d 325 (magistrate judge decision), *aff'd,* Letter Order Opinion (D.N.J. Dec. 14, 14, 1998). The *Gilberg* court after engaging in an extensive and thorough analysis of the statutory language and legislative history of the PAA concluded that "whether as a matter of statutory construction or the structure and history of the Act, no claim for public liability can lie in absence of an applicable indemnity agreement." The *Gilberg* court specifically criticized the Tenth Circuit for failing to engage in an analysis of the term "occurrence" as used in the definition of "nuclear incident" under 42 U.S.C. 2014(q). According to the *Gilberg* court, in order for there to be a "nuclear incident", there must be an "occurrence", which under the PAA can "only be an 'event...[at] 'the location' or the 'contract location' as defined in the applicable...indemnity agreement, entered into pursuant to section 2210." 24 F. Supp. 2d at 340 (*citing to* 42 U.S.C. § 2014(j) and (q)." In addition, the *Gilberg* court concluded that the Tenth Circuit had misread *Silkwood*.

17

U.S.C. §§ 2014(w), 2210(n), as amended by the 1988 Amendments, *appear broad enough to create a federal forum for any tort claim even remotely involving atomic energy production.*" *Id.* at 1504 (emphasis added).

Although this Court initially refrained from determining whether the tribal law claims were PAA "public liability actions," this issue has been argued before and decided by the Tenth Circuit. Accordingly, it is clear that the asserted tribal common law claims arising from the alleged negligence of the uranium mill operators are "public liability actions" under the PAA.


**2.    Proper Forum For Adjudicating Tribal Claimants' Action**

Having concluded that these claims are PAA "public liability actions" it is incumbent upon this Court to determine the proper forum for adjudicating these claims. The Court has federal question jurisdiction to determine whether the Navajo Court had jurisdiction over these PAA claims. *See* 28 U.S.C. § 1331; *see also El Paso Natural Gas v. Neztsosie*, 526 U.S. 473 *National Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845. Although the Court would normally refrain from engaging in such a jurisdictional analysis pursuant to the tribal exhaustion rule, *Neztsosie* compels the Court to not apply tribal exhaustion in the context of the PAA.

Numerous courts, including this Court, have recognized that tribes occupy a "unique status" in our legal system. *See, e.g.*, *National Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. at 851 ("Indian tribes occupy a unique status under our law"); *accord NLRB v. Pueblo of San Juan*, 30 F. Supp. 2d 1348, 1354 (D.N.M.) (*citing to Kerr-McGee v. Farley*, 915 F. Supp. at 276 ("Tribes have a unique relationship with the federal government and occupy a unique status under law")). Tribal sovereignty is a fundamental aspect of this unique status. One important

18

tenant of tribal sovereignty is the exercise of tribal authority over civil matters arising on tribal land. As the Supreme Court has stated, "[t]ribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty" and accordingly "[c]ivil jurisdiction over such activities presumptively lies in tribal courts unless affirmatively limited by a specific treaty or federal statute." *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. at 18. In *Iowa Mutual*, the Supreme Court interpreted congressional silence on the subject of tribes in the statutory language and legislative history of a diversity statute to mean that tribal jurisdiction and sovereignty was not divested. *Id.* On several occasions, the Supreme Court has emphasized that while Congress has the power to limit or abolish a tribe's sovereignty, the congressional intent to infringe upon tribal sovereignty should be clear. *See, e.g., Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 148 (1982); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 60 (1978). Therefore, because Indian tribes "retain[] all inherent attributes the proper inference from Congressional silence...is that the sovereign power...remains intact." *Merrion v. Jicarilla Apache Tribe*, 455 U.S. at 148, n.14 (*accord NLRB v. Pueblo of San Juan*, 30 F. Supp. 2d at 1355 ("silence regarding Indian Tribes is insufficient to establish an abrogation of traditional sovereign authority").

The basic tenant that Congress must express a clear intent to divest tribal sovereignty has been adhered to closely by the Tenth Circuit. For example, in *Becenti v. Vigil*, the Tenth Circuit declined to infer a federal court removal provision for suits against federal officials brought in tribal courts, where a statute explicitly authorized removal only from state courts and was silent on the issue of tribal courts. 902 F.2d 777 (10th Cir. 1990). The Tenth Circuit applied this reasoning to its opinion in the present case, finding that "statutory silence" on the removal of

actions from tribal to federal court "cannot be converted into an 'express jurisdictional prohibition' on the exercise of tribal adjudicatory authority." *Kerr-McGee v. Farley*, 115 F.3d at 1505.

Applying these principals to the case at bar, there is a presumption that the Navajo Court properly exercised jurisdiction over the public liability claims asserted by Tribal Claimants, unless tribal jurisdiction over these claims was affirmatively limited by the PAA. *See Iowa Mutual Ins. Co. v. LaPlante, 480 U.S.* at *18*. Thus, the central question before this Court is whether Congress clearly intended the PAA to divest tribal courts of jurisdiction over public liability actions.

Tribal Claimants assert that the PAA does not expressly deprive tribal courts of jurisdiction. Citing to the precedent of cases just explicated by this Court, the Tribal Claimants argue that the congressional silence on the issue of removal of public liability actions from tribal to federal court should be interpreted to find that tribal courts have not been divested of jurisdiction over PAA cases. *See Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. at 18; *Merrion v. Jicarilla Apache Tribe*, 455 U.S. at 148; *Santa Clara Pueblo v. Martinez,* 436 U.S. at 60. Tribal Claimants further assert that the canons of construction over Indian tribal law mandate that ambiguity in statutes be construed in favor of preserving tribal sovereignty. *See Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985); *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 889 (2d Cir.), *cert. denied*, 519 U.S.1041 (1996); *accord NLRB v. Pueblo of San Juan*, 30 F. Supp.2d at 1355 (*citing to White Mountain Apache Tribe v. Bracker*, 488 U.S. 136, 143-44 (1980)). Finally, Tribal Claimants contend that the Supreme Court refrained in *Neztsosie* from determining whether federal courts have exclusive jurisdiction over PAA actions. Accordingly, Tribal Claimants maintain that concurrent jurisdiction over PAA claims exists within

tribal and federal courts.

Disputing the assertions of Tribal Claimants, Kerr-McGee contends that tribal courts are without jurisdiction over PAA claims once a defendant seeks a federal forum.[4] Kerr-McGee argues that notwithstanding congressional silence on the issue of removal from tribal court, there is a clear congressional preference for a federal forum for PAA actions. Kerr-McGee further contends that the Supreme Court made clear in *Neztsosie* that tribal jurisdiction over PAA claims is disfavored.

This Court agrees with Tribal Claimants that the PAA does not expressly divest tribal courts of jurisdiction over public liability actions. There is no express procedural mechanism provided to remove tribal court actions to federal court. Nor is there any mention of tribal courts either in the statutory language or the legislative language of the PAA. However, in the face of the Supreme Court's ruling in *Neztsosie*, this Court cannot infer from this silence that Congress did not intend to oust tribal courts of jurisdiction over PAA claims at the behest of a defendant. In *Neztsosie*, the Supreme Court found that the PAA "expressed an unmistakable preference for a federal forum, at the behest of the defending party, both for litigating a Price-Anderson claim on the merits and for determining whether a claim falls within Price-Anderson when [state] removal is contested." 526 U.S. at 484-85. Although Congress provided a right of removal only from state court, the Supreme Court's opinion clearly sets forth its view that Congress intended the

---

[4]     In disputing the arguments of Tribal Claimants, Kerr-McGee twice refers to Tribal Claimants as the "proverbial ostrich" attempting to avoid the force of *Neztsosie*. The Court is troubled by Kerr-McGee's misplaced name calling and derogatory characterization of Tribal Claimants' position. Certainly there is room for reasonable debate about the jurisdictional scope of the PAA and this Court favors a forum where such legal arguments can be brought to light. While the Court appreciates artful lawyering, in the future counsel for Kerr-McGee is advised to present the merits of their claim in a more professional manner.

federal forum preference to apply equally to tribal and state courts. This position is expressed unmistakably when the Supreme Court stated that "leaving such claims in these [tribal] courts would just as effectively thwart the Act's policy of getting such cases into a federal forum for consolidation, as leaving them in state forums would do." 526 U.S. at 487.

Although the Supreme Court did not explicitly rule on the issue of whether a tribal court could exert jurisdiction over a PAA action once a defendant seeks a federal forum, the effect of its *dicta* is forceful. The Supreme Court, while refraining from ruling on the issue of the district court's injunction prohibiting Tribal Claimants from pursuing PAA claims in Navajo Court, noted that "the exercise of tribal jurisdiction over claims found to fall within the Act once a defendant has sought a federal forum would be anomalous at best." 526 U.S. at 483, n. 5. Tribal Claimants dispute the strength of this statement by pointing out that federal Indian law often produces "anomalous results" but is tolerated nonetheless. *See White Mountain Apache Tribe v. Bracker*, 488 U.S. at 142 ("[t]he status of tribes has been described as an anomalous one and of complex character for dispute their partial assimilation into American culture, the tribes have retained a semi-independent position..."); *Santa Clara Pueblo v. Martinez,* 436 U.S. at 71 ("[o]ur relations with the Indian tribes have always been...anomalous...and of a complex character...." Tribal Claimants may be correct in their characterization of the anomalous nature of tribal jurisdiction. However, the Supreme Court made it quite clear in Neztsosie that the anomaly of "duplicative determinations" and its consequent "inefficiencies" was something that Congress had sought to avoid by enacting the PAA. The Court agrees with Tribal Claimants that the PAA initially provides for concurrent jurisdiction over public liability actions. However, once a federal forum is sought, this concurrent jurisdiction must give way to exclusive federal jurisdiction. The *Neztsosie*

ruling would have little meaning if there was not some way to avoid the "mischief of 'duplicative determinations'" inherent in concurrent jurisdiction.[5]  Such duplicative determinations and its consequent inefficiencies can be avoided only through exclusive federal jurisdiction.

Furthermore, Congress in enacting both the AEC and the subsequent PAA amendments intended to occupy the entire field of nuclear regulation both through legislation and in creating a federal adjudicative forum, thereby preempting any inconsistent state law action.  *See Pacific Gas & Electric Co v. State Energy Resources Conservation & Development Comm'n*, 461 U.S. 190, 203-204 91983) (where Congress evidences a clear intent to occupy a given field, any state law falling within that field is preempted).  Here, Congress, over a period of fifty years, created an extensive regulatory scheme over the nuclear industry, culminating in 1988 with the PAA Amendments creating a federal cause of action, complete with a removal procedure, venue, consolidation, and management provisions.  Congress made clear that in creating this federal cause of action, it was hoping to eliminate the inefficiencies and duplicative determinations associated with concurrent jurisdiction.  Other courts that have considered the general question of the scope of jurisdiction under the 1988 PAA amendments have found that Congress intended to create exclusive federal cause of action for torts arising out of nuclear incidents.  *See Acuna v. Brown & Root*, 200 F.3d 335 (5th Cir. 2000); *Roberts v. Florida Power & Light Co.*, 146 F.3d

--------------------------------------

[5]     This Court is not as concerned as was Congress and the Supreme Court in *Neztsosie* about the prospect of duplicative determinations in state, tribal and federal court.  Given the fact the PAA allows for state law (and presumably tribal law) to be applied as the substantive law of the public liability action to the extent that it does not conflict with the PAA, it would appear to be more efficient to allow the tribal or state court with the requisite expertise in their own substantive laws to adjudicate such actions.  In addition, it is important for the community in which a tragedy occurs to have a role in determining the proper and just outcome of the case.  Nonetheless, in the context of larger nuclear accidents which could give rise to multiple litigation, the concern about duplicative determinations is well taken.

1305 (11th Cir. 1998); *O'Conner v. Commonwealth Edison Company*, 13 F.3d 1090, 1100 (7th Cir. 1994); *In Re Three Mile Island II*, 940 F.2d 832 (3d Cir. 1991). Although these courts found exclusive federal jurisdiction in the context of removal from state court, this Court believes that in light of the *Neztsosie* ruling, this exclusive federal jurisdiction must apply to tribal courts as well where a defendant seeks a federal forum. Furthermore, the Ninth Circuit, in *State v. Hicks*, analyzed *Neztsosie* as holding that "the Price-Anderson act preempted the injury claims, requiring that actions be brought only in federal court." 196 F.3d 1020, 1026 (1999).

This Court's ruling is not inconsistent with *Iowa Mutual*, in which the Supreme Court held that tribal civil jurisdiction over the activities of non-Indians on tribal lands remains intact unless "affirmatively limited by a specific treaty provision or federal statute." 480 U.S. at 18. The Supreme Court in *Neztsosie* found that Congress intended to affirmatively limit non-federal adjudication of PAA actions, stating "any generalized sense of comity toward nonfederal courts is obviously displaced by the provisions for preemption and removal from state court. The apparent reasons for this congressional policy of immediate access to federal forums are as much applicable to tribal -- as to state -- court litigation." 526 U.S. 485-86. This combination of the preference for a federal forum and the absence of comity concerns weighs heavily in favor of concluding that the PAA affirmatively creates exclusive federal jurisdiction over PAA claims at the request of the defendant, and conversely limits tribal jurisdiction over such cases. This Court's holding does not undermine the basic tenants of Indian tribal jurisdiction which hold that absent clear intent by Congress, tribal jurisdiction is presumed. *See National Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845; *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9. Rather, this Court finds only that Congress has expressed its clear intent for exclusive jurisdiction applicable both to state

and tribal courts in the particular context of the PAA, where Congress has created a federal cause of action, complete with venue, consolidation and case management provisions and where the Supreme Court has stated in *Neztsosie* that such preference for a federal forum should apply with equal force to both tribal and state courts.

This Court will not speculate about the nature of Congress' silence with regard to tribal jurisdiction over PAA claims. As this Court previously noted, Congress was obviously aware of the possibility of nuclear torts occurring on tribal lands, given the requirement of a government license to construct and operate nuclear mills on tribal reservations. *See Kerr-McGee v. Farley*, 915 F. Supp. at 280. This belief is bolstered by the Nuclear Regulatory Commission's 1998 recommendation that Congress "determine whether a public liability lawsuit arising or resulting from a nuclear accident may be filed in a tribal Court." *NRC, The Price-Anderson Act--Crossing the Bridge to the Next Century: A Report to Congress* at xxi (August 1, 1998). Generally speaking, this Court would find that such silence precludes a finding that tribal jurisdiction has been divested. *See Kerr-McGee v. Farley*, 915 F. Supp. at 277. However, the Supreme Court has expressed its opinion that such silence is a product of "inadvertence," and should not be interpreted to undermine congressional intent. Where congressional intent is to create access to a federal forum at the behest of a defendant, this Court is bound by *Neztsosie* to execute such intent, notwithstanding congressional silence. To hold otherwise, and to draw negative inferences from congressional silence in the PAA would necessarily undermine both the Supreme Court's holding in *Neztsosie* and the congressional preference for a federal forum over PAA actions.

## V.     Merits of the Preliminary Injunction

Although the Supreme Court in *Neztsosie* danced around the issue of whether a preliminary injunction is an appropriate means of exerting federal jurisdiction over PAA actions, this Court can think of no other means of effectuating the transfer of PAA actions from tribal court to federal court in the absence of a statutory removal procedure. In order to establish entitlement to a preliminary injunction, the moving party must show (1) there will be irreparable injury if an injunction is not granted; (2) the threatened injury to the moving party outweighs any injury the injunction will cause to the nonmoving party; (3) the injunction would not be detrimental to the public interest; and (4) there is a substantial likelihood the party will succeed on the merits. *See Walmer v. United States Dep't of Defense*, 52 F.3d 851, 854 (10th Cir), *cert. denied*, 516 U.S. 974 (1995). Kerr-McGee has requested a hearing on this issue, however because there is no dispute as to the material facts in this case, the Court does not require an evidentiary hearing. *See Moore's Federal Practice 3D* § 65.21[4] (hearing on merits of preliminary injunction only required when material facts are disputed); *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998); *McDonald's Corp v. Robertson*, 147 F.3d 1301, 1312-13 (11th Cir. 1998). The Court finds that Kerr-McGee will suffer irreparable damage if Tribal Claimants are not enjoined from proceeding in Navajo Court, as demonstrated by the expense and time involved in litigating this case in tribal court. The Court also finds that the injury to Kerr-McGee outweighs any injury to Tribal Claimants, since Congress intended to create an exclusively federal forum for PAA claims. It is in the public interest to adhere to congressional intent and avoid the "duplicative determinations" and inefficiencies associated with concurrent jurisdiction over PAA actions. Finally, there is a substantial likelihood that Kerr-McGee will succeed on the merits of this issue on appeal to the Tenth Circuit. For these reasons, the Court will enjoin Tribal

Claimants from proceeding with their PAA claims in Navajo court. Tribal Claimants are free to bring these claims in federal court, for instance by filing a counter-claim, or in state court where they can be removed to federal court pursuant to the PAA removal provision. Because this Court has found that as a matter of law the PAA divests tribal courts of jurisdiction over public liability actions, Tribal Claimants motion for summary judgment must be denied.

The Court is troubled by the practical effect of holding that the PAA deprives tribal courts of jurisdiction once a federal forum is sought by a defendant. Without an express removal provision in place, the only means available to federal courts to enforce such a ruling is through the awkward mechanism of an injunction. The Court cannot imagine that Congress would have intended for tribal courts to be deprived of jurisdiction over PAA claims without creating a procedural means of transferring such cases to federal court. Nonetheless, the Supreme Court has spoken on the issue in *Neztsosie*, and this Court is bound to follow both the letter and the intent of its ruling.

However, in the interest of judicial economy, the Court will *sua sponte* certify this issue for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b). As the Court's review of *Neztsosie* and tribal sovereignty case law demonstrates, there is "substantial ground for difference of opinion" on this issue as to whether Neztsosie deprived tribal courts of jurisdiction over PAA actions. 28 U.S.C. § 1292(b); *see Young v. Nationwide Life Ins. Co.*, 2 F. Supp. 2d 914, 930 (S.D. Tex. 1998); *Public Interest Research Group v. Hercules, Inc.*, 830 F. Supp. 1549, 1555 (D.N.J. 1993); *Lamont v. Schultz*, 748 F. Supp. 1043, 1057 (S.D.N.Y. 1990). In addition, the Court finds that an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Tenth Circuit has recognized that certification is appropriate

where "extended and expensive proceedings probably can be avoided by immediate final decision of controlling questions encountered early in the action." *Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994) (citation omitted). In the absence of an appeal, the parties may well proceed to trial in an entirely inappropriate forum. Since this is a case where "interlocutory reversal might save time for the district court, and time and expense for the litigants," immediate interlocutory appeal is warranted. *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) (citation omitted).

## VI.    Costs and Attorneys Fees

The final matter before this Court is Kerr-McGee's motion for attorney fees and costs associated with filing this motion to lift stay and application for preliminary injunction. Kerr-McGee does not state the basis for its motion for costs or attorney fees. There is no final judgment in this case under which costs would be recoverable pursuant to FED. R. CIV. P. 54(d). Nor are there any equitable grounds asserted for recovery of costs or attorney fees. Accordingly, the motion for costs and attorney fees will be denied.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Kerr-McGee's Motion to Lift Stay and Application for Preliminary Injunction **[Doc. No. 40]** is **GRANTED**; Kerr-McGee's Motion for Attorney Fees and Costs is **DENIED**; Kerr-McGee's Motion Requesting Oral Argument **[Doc. No. 44]** is **DENIED**; Farley's Motion for Summary Judgment **[Doc. No. 45]** is **DENIED;** and this matter is hereby certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Dated this 10th day of March, 2000

_____
**MARTHA VAZQUEZ**
**U. S. DISTRICT COURT JUDGE**

Attorneys for Plaintiff Kerr-McGee
Michael Comeau, Jon Indall

Attorneys for Plaintiff Cyprus Foote
Tom Galbraith, Robert Hilgendorf

Attorneys for Defendant Farley
John Boyd
Max Berger, Seth Lesser, Louis Paul
Moshe Maimon