IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KERR-MCGEE CORPORATION and
CYPRUS FOOTE MINERALS CORPORATION,

        Plaintiffs,

vs.                                     No. CIV 95-0438 MV/RLP

KEE TOM FARLEY, individually and on behalf
of THE ESTATE OF LUCY K. FARLEY and
HAROLD KADY, SR., individually and on behalf
of the ESTATE OF JULIA MAE KADY,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion to Strike or Discharge

Attorneys' Charging Lien and to Approve Settlement **[Doc. No. 55]**, filed July 3, 2001.

Defendants move the Court for an order approving the settlement reached between

Plaintiffs and Defendants. Additionally, Defendants move the Court for an order striking

or discharging the attorneys' charging lien filed in this case in1996 by the law firm of

Howarth & Smith. As grounds for their motion, Defendants contend the parties and their

counsel have reached a settlement agreement in the amount of $50,000. The parties and

their counsel also have agreed that the entire settlement amount should be paid to

Defendants. All current counsel have agreed to waive fees and any recovery expenses.

However, Howarth & Smith has declined to waive fees and any recovery expenses and

thus oppose the motion to discharge the attorneys' charging lien. Howarth & Smith takes

no position regarding the settlement.

## I. BACKGROUND

Kee Tom Farley (now deceased) and Harold Kady (Tribal Plaintiffs) are members

of the Navajo Nation. On January 12, 1995, Cherie Daut-Neztososie, an attorney admitted

to the Navajo Court, filed this wrongful death, loss of consortium and misrepresentation

action in the District Court of the Navajo Nation (Tribal Action) on behalf of the Tribal

Plaintiffs and against Kerr-McGee Corporation and Cyprus Foote Minerals Corporation.[1]

The Tribal Plaintiffs sought personal injury damages for the cancer which they claimed

took the lives of their parents. The Tribal Plaintiffs claimed the cancer and ultimate deaths

of their parents resulted from the uranium milling and/or mining activities of Kerr-McGee

and Cyprus on the lands of the Navajo Nation.

On April 21, 1995, Kerr-McGee and Cyprus filed this declaratory action, seeking a

temporary restraining order and a preliminary injunction under the Price Anderson Act

(PAA), 42 U.S.C. § 2210 *et seq.*, to enjoin the Tribal Action. On June 8, 1995, the Court

found that the tribal abstention doctrine applied and stayed all proceeding in this Court

until tribal court proceedings were exhausted. *See Kerr-McGee v. Farley*, 915 F.Supp. 273

(D.N.M. 1995). Specifically, the Court found the tribal exhaustion doctrine required that

the tribal court be given the first opportunity to determine its own jurisdiction. *Id.* at 276.

Subsequently, after the Court's June 8, 1995 ruling, the District Court of Navajo issued an

---

[1] Ms. Neztsosie also filed similar cases in Tuba City, Shiprock, Kayenta, and Window Rock.

order finding tribal court jurisdiction over the tort claims asserted by the Tribal Plaintiffs. *See Farley v. Kerr-McGee*, No. 103-95 Navajo D.Ct. (August 1, 1996). On June 25, 1997, the Tenth Circuit affirmed the Court's ruling, finding abstention was appropriate. *See Kerr-McGee Corp. v. Farley*, 115 F.3d 1498 (10th Cir. 1997).

In early 1996, Ms. Daut-Neztsosie contacted Howarth & Smith, a law firm known for handling cases involving exposure to radiation, and asked the firm to assist in handling the *Farley* case and the other four Tribal Actions she had filed. According to Don Howarth, Ms. Daut-Neztsosie would continue to communicate with the clients directly and Howarth & Smith would focus on preparing the case against Kerr-McGee. Mr. Howarth contends Ms. Daut-Neztsosie agreed that the *Neztsosie* case, one of the other cases she had filed, would be the lead trial case, with the other cases, including *Farley*, to follow.

Sometime in November 1996, Ms. Daut-Neztsosie had a disagreement with counsel from Howarth & Smith as to the appropriate manner in which to prosecute the cases. Shortly thereafter, Ms. Daut-Neztsosie approached the firm of Bernstein Litowitz Berger & Grossmann and requested assistance in the prosecution of the cases, both in this Court, the District of Arizona, and in several Tribal Courts.

On December 3, 1996, Howarth & Smith filed a Notice of Disassociation of Counsel, Notice of Lien Claim and Request for Notification in Tribal Court. Howarth & Smith claimed legal fees in excess of $1,295,000 and expenses in excess of $82,972.24, plus interest. Lesser Aff. Ex. D at 2. Howarth & Smith also filed substantially identical Notice of Lien Claims in the other uranium actions, including one in this Court. On March 5, 1997, Howarth & Smith filed an Amended Notice of Lien Claim and Request for Notification in

this action and in the Tribal Action, amending the lien expenses for this action to $92,325.48. Howarth & Smith also filed identical amended liens in the other uranium cases.

On August 27, 1999, following the Supreme Court's decision in *El Paso Natural Gas v. Neztsosie*, 526 U.S. 473 (1999), Kerr-McGee filed a Motion to Lift Stay and Application for Preliminary and Permanent Injunction. Kerr-McGee argued that *Neztsosie* had undercut the Court's decision in *Kerr-McGee v. Farley*, 915 F.Supp. 273 (D.N.M. 1995), as well as the Tenth Circuit's affirmance. Kerr-McGee asserted the Supreme Court held in *Neztsosie* that tribal courts do not have jurisdiction over PAA claims once injunctive relief is sought in a federal court. Consequently, in its application for preliminary injunction, Kerr-McGee sought to enjoin Tribal Plaintiffs from pursuing their suit in Navajo Court. On March 10, 2000, after a thorough analysis of *Neztsosie,* the Court found Tribal Plaintiffs' claims were PAA "public liability actions," and determined the proper forum to adjudicate these claims was in a federal forum. Accordingly, the Court granted Kerr-McGee's motion to lift the stay and the application for preliminary injunction. In addition, the Court *sua sponte* certified the issue for interlocutory appeal. Thereafter, Tribal Plaintiffs appealed the Court's ruling.

While the case was pending at the Tenth Circuit, the action was referred to the Tenth Circuit Mediation Office for settlement purposes. The parties settled the case for $50,000. Each of the two Tribal Plaintiffs' families is to receive $25,000. The settlement is contingent on approval by this Court and the Tribal Court, as well as the discharge of the attorneys' lien filed by Howarth & Smith. In an effort to maximize Tribal Plaintiffs'

recovery, the attorneys in the case agreed to waive all legal fees and expenses. Howarth & Smith has refused to waive its legal fees and expenses.

## II. <u>DISCUSSION</u>

In New Mexico, the attorney's charging lien "has its origin in the common law, and is governed by equitable principles." *Northern Pueblos Enterprises v. Montgomery*, 98 N.M. 47, 49 (1982). It is an equitable remedy administered by the court in its discretion. *Cherpelis v. Cherpelis*, 125 N.M. 248, 250 (Ct. App. 1998). The charging lien is the long-established equitable right of an attorney to seek the aid of the Court to get paid for his or her services. *Id.* at 252. In New Mexico, there are four requirements for the imposition of an attorney's charging lien. These requirements are: (1) there must be a valid contract between the attorney and the client; (2) the fund to which the lien attaches must have been recovered by the efforts of the attorney; (3) the attorney must give notice to all parties involved in the litigation of the intent to assert a lien against any judgment; and (4) the assertion by the attorney must be timely. *See Sowder v. Sowder,* 127 N.M. 114, 117-18 (Ct. App. 1999). The Court may inquire into the reasonableness of the requested fee for purposes of enforcing the lien. *Northern Pueblos Enterprises*, 98 N.M. at 49. Additionally, under New Mexico law, an attorney may assert a lien against a judgment obtained by a former client, even though the attorney was not involved throughout the litigation and other attorneys' efforts contributed to the recovery. *See Robison v. Campbell,* 99 N.M. 579 (Ct. App.1983).

The parties do not dispute that Howarth & Smith gave timely notice of its intent to assert a lien against any judgment entered in this case. *See* Lesser Aff. Ex. D at 2.

Therefore, the only issues before the Court are (1) whether there was a valid contract between Howarth & Smith and the Tribal Plaintiffs and (2) whether Howarth & Smith's efforts played a role in recovering the $50,000 settlement fund.

### A. No Valid Contract, Express or Implied, Exists Between Howarth & Smith and the Tribal Plaintiffs

Tribal Plaintiffs contend there is no retainer agreement, express or implied, between them and Howarth & Smith. Tribal Plaintiffs assert that the only attorney they retained to represent them in the tribal action and this action was Ms. Daut-Neztsosie and have submitted a copy of one of the written retainer agreements.[2] *See* Lesser Aff. Ex. C. Ms. Daut-Neztsosie contingency fee agreement with the Tribal Plaintiffs provided for a 10% fee based on recovery and did not provide for any allocation of expenses to the Tribal Plaintiffs.[3] *Id.* Moreover, on May 8, 2001, counsel for Tribal Plaintiffs requested from Howarth & Smith copies of the fee agreements/retainer agreements it had with the Tribal Plaintiffs. Lesser Aff. ¶ 20. Howarth & Smith never responded. Tribal Plaintiffs claim that, at most, Howarth & Smith had an informal association with their counsel, Ms. Daut-Neztsosie. Additionally, Tribal Plaintiffs contend they have never communicated with Howarth & Smith. *See* Lesser Aff. Ex. O.

---

[2] Counsel for Tribal Plaintiffs does not dispute that Mr. Howarth was involved in the preparation of the briefs as well as oral argument in the first appeal to the Tenth Circuit, nonetheless, they maintain that Howarth & Smith never entered its appearance or represented the Tribal Plaintiffs in this action. Lesser Aff. at ¶ 24.

[3] Under Ms. Daut-Neztsosie's retainer agreement with Tribal Plaintiffs, she would be entitled to $5,000. However, she has waived her right to recover that amount. Defs.' Mem. in Supp. of Mot. to Strike or Discharge Attorneys' Charging Lien and Approve Settlement at 8.

Tribal Plaintiffs have presented Ms. Daut-Neztsosie's submission to the Tribal Court regarding Howarth & Smith's lien in the Tribal Action to support their position that there is no retainer agreement, express or implied, between them and Howarth & Smith. On October 22, 1997, at the request of the Tribal Court, Ms. Daut-Neztsosie filed a submission in the Tribal Action, asserting Howarth & Smith had never rendered any legal services in the Tribal Action. Lesser Aff. Ex. O at 2. Ms. Daut-Neztsosie also claimed Howarth & Smith had never appeared before the Tribal Court, had never filed any documents in the Tribal Court and had never communicated with the Tribal Plaintiffs in the Tribal Action. *Id.* Accordingly, Ms. Daut-Neztsosie moved the Tribal Court to reject Howarth & Smith's lien. Ultimately, the Tribal Court granted Tribal Plaintiffs' "petition to discharge as null and void the attorneys (sic) lien filed by Howarth & Smith." *See* Order and Final Judgment entered in the District Court of the Navajo Nation Judicial District of Shiprock, New Mexico on December 3, 2001.[4]

In its defense, Howarth & Smith counters that Ms. Daut-Neztsosie represented to Howarth & Smith that she had the authority to associate other counsel to assist in the preparation of the Tribal cases. Howarth & Smith asserts Ms. Daut-Neztsosie agreed that the *Neztsosie* case would be the "lead" trial case and argues that, although the time and expenses were incurred in preparing the *Neztsosie* case, all the clients benefitted, including the *Farley* Tribal Plaintiffs. In fact, Howarth & Smith argues, "it would be grossly unfair to charge all costs for expert preparation, gathering of evidence, and development

---

[4] On September 17, 2001, The District Court of the Navajo Nation, District of Tuba City also entered an Order and Final Judgment, "granting the motion to declare the fee and cost lien of attorneys Howarth & Smith to be null, void and of no effect . . . ."

of the general case solely to the client whose case goes to trial first." See Opp'n to Defs.' Mot. to Strike or Discharge Attorneys' Charging Lien and to Approve Settlement at 3. Howarth & Smith claims it spent "considerable time, in excess of $1,295,000, and considerable out-of-pocket expenses of $85,293.26, to fully prepare the *Neztsosie* case for trial." *Id.* at 4. Specifically, Howarth & Smith alleges it spent $31,977.86 on experts and claims those costs are associated with all of the cases.

Tribal Plaintiffs dispute Howarth & Smiths' claims that the work done in connection with *Neztsosie* benefitted them. Tribal Plaintiffs contend the two cases had nothing in common and the "science, causation and law" differed. Pls.' Reply Mem. in Supp. Mot. to Strike at 3. Tribal Plaintiffs contend the *Neztsosie* case involved a condition called "Navajo Neuropathy" while the Tribal Plaintiffs' claims involved two forms of cancer. *Id.* In addition, the *Neztsosie* case involved exposure at abandoned mine pits whereas the claims in this case arose from a uranium processing facility. *Id.* This difference called for different legal defenses, for example, failure to comply with governing federal regulations in the latter. Notably, Tribal Plaintiffs assert the experts Howarth & Smith claims benefitted all the cases were not engaged by them. In fact, Tribal Plaintiffs contend that, if their case had proceeded to trial, entirely new experts would have been required on virtually every aspect of their case because experts on mining practices or neuropathy could not offer opinions on mill procedures or cancer. *Id.*

Howarth & Smith's reliance on their alleged informal agreement with Ms. Daut-Neztsosie does not satisfy the first requirement enumerated in *Sowder.* New Mexico law is clear. The contract must be between the firm and the Tribal Plaintiffs. Howarth & Smith

admits that their understanding was with Ms. Daut-Neztsosie and not with the Tribal Plaintiffs. Howarth & Smith does not dispute Tribal Plaintiffs' claim that Howarth & Smith never communicated with them. Howarth & Smith does not contend that Tribal Plaintiffs ratified its employment by Ms. Daut-Neztsosie and agreed to have its fees paid from the judgment. The only assertion by Howarth & Smith is that "Ms. Daut-Neztsosie's declaration does not say that she did not have the authority to associate other counsel . . . ." Opp. of Lien Claimant Howarth & Smith to Defs.' Mot. to Strike or Discharge Attorneys' Charging Lien and to Approve Settlement at 3. This does not satisfy New Mexico's common-law requirements for an attorney's charging lien. *See e.g., Democratic Central Committee of the District of Columbia v. Washington Metropolitan Area Transit Commission*, 941 F.2d 1217 (D.C.Cir.1991) (associate counsel can only obtain an attorney's lien if the client authorizes or ratifies his employment by the principal attorney and the client agreed to have his associate's fee paid from the judgment); *Hahn v. Oregon Physicians' Service*, 786 F.2d 1353 (9th Cir. 1985) (attorney associated with lead counsel has no right to a lien against the ultimate recovery in the absence of an independent contract between him and the clients). Accordingly, the Court finds that no valid contract, express or implied, existed between Howarth & Smith and Tribal Plaintiffs.

## B. Howarth & Smith Was Not Instrumental in Procuring the Settlement

Tribal Plaintiffs also assert Howarth & Smith did not play any role in attaining the settlement. According to Tribal Plaintiffs, Howarth & Smith filed its Disassociation of Counsel and Lien in this Court and in the Tribal Court in December 1996. From late 1996, the law firms of Bernstien, Litowitz, Berger & Grossman, Levy, Phillips & Konigsberg and

Freedman, Boyd, Daniels, Hollander, Goldberg & Cline have represented the Tribal Plaintiffs. Tribal Plaintiffs again assert that Howarth & Smith never represented them.

Howarth & Smith contends it spent considerable time directly related to *Farley* in the first appeal to the Tenth Circuit and have submitted the Calendar Notice listing Don Howarth as counsel for the Farleys in the Court of Appeals. See Howarth Decl. ¶ 7, Ex. C. Additionally, Howarth & Smith claims its work helped bring the case to resolution.

Although Howarth & Smith may have been responsible for some of the preparation of the first appeal to the Tenth Circuit, Howarth & Smith fails to show how that effort contributed to the settlement achieved by present counsel for Tribal Plaintiffs. In fact, in its opposition to Defendants' motion, Howarth & Smith essentially admits present counsel were responsible for the $50,000 settlement. In its opposition to Defendant's motion, Howarth & Smith states "Given that the low result here is attributable to present counsel, we suggest that at least as to the fee to Howarth & Smith, it come out of the contracted-for fee obtained by the Bernstein Litowitz firm."[5] Opp. of Lien Claimant Howarth & Smith to Defs.' Mot. to Strike or Discharge Attorneys' Charging Lien and to Approve Settlement at 5. "'It is not enough . . . to support the imposition of a charging lien that an attorney has provided his services; the services must, in addition, produce a positive judgment or settlement for the client, since the lien will attach only to the tangible fruits of the services.'" *Sowder*, 127 N.M. at 117 (quoting *Glickman v. Scherer*, 566 So.2d 574, 575 (Fla.Dist.Ct.App.1990)). Howarth & Smith's bald assertion that its work helped bring the

_____

[5] It is not clear to the Court what "contracted-for fee" Howarth & Smith is referring to, since there is no mention in the pleadings of any agreement between Howarth & Smith and the law firm of Bernstein Litowitz Beger & Grossman for attorney fees.

case to resolution is insufficient to establish that the settlement was recovered by its efforts when Howarth & Smith provided no explanation or evidence to support this assertion. Accordingly, the Court also finds that Howarth & Smith was not instrumental in reaching the settlement in this case.

### III. <u>CONCLUSION</u>

The Court finds that Howarth & Smith did not have a valid contract with the Tribal Plaintiffs and its efforts did not procure the settlement. Consequently, the Court finds that Howarth & Smith's charging lien is not valid and is therefore discharged. Furthermore, the Court approves the settlement.

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that Defendants' Motion to Strike or Discharge Attorneys' Charging Lien and to Approve Settlement is **GRANTED**.

**IT IS FURTHER ORDERED** that Howarth & Smith's charging lien is discharged.

**IT IS FURTHER ORDERED** that the Settlement is approved.

Dated: September 26, 2002.

_____
**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**

**Attorneys for Plaintiffs:**
Michael R. Comeau, Esq.
Robert N. Hilgendorf, Esq.
John D. Robb, Esq.
Mel E. Yost, Esq.

**Attorneys for Defendants:**
Kevin Gover, Esq.
John W. Boyd, Esq.
Cherie V. Daut, Esq.